UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCIS ANTHONY TREVINO, et al.,

Plaintiffs,

v.

KEVIN W. QUIGLEY, et al.,

Defendants.

CASE NO. C18-0487JLR

ORDER DENYING MOTIONS

## I. INTRODUCTION

Before the court is *pro se* Plaintiffs Francis Anthony Trevino and Mark Newton Kelly's (collectively, "Plaintiffs") motion for preliminary and permanent injunctive relief (Inj. Mot. (Dkt. # 9)), second motion for reconsideration (2d MFR (Dkt. # 10)), and motion to certify for interlocutory appeal (IA Mot. (Dkt. # 11)). Defendants Kevin W.

//

//

Quigley and Dorothy Sawyer (collectively, "Defendants") have not responded.[1] The court has considered the motions, the relevant portions of the record, and the applicable law. Being fully advised,[2] the court denies the motions and orders Plaintiffs to show cause why this case should not be dismissed for failure to comply with Federal Rule of Civil Procedure 4(m).

## II. BACKGROUND

Although their complaint is difficult to follow, it appears that Plaintiffs bring suit to challenge their confinement and Washington State's procedures for evaluating civil competency and commitment. (*See* Compl. (Dkt. # 1) at 12 (stating that over 190 days have elapsed and citing Washington's statute on competency examinations); *see also id.* at 15-16 (citing RCW ch. 10.77); *id.* at 10 (citing *Doe v. Gallinot*, 657 F.2d 1022 (9th Cir. 1981), which discusses the constitutionally protected liberty interest of a person who has been involuntarily committed).) Mr. Trevino alleges that he was arrested on August 6, 2016. (*Id.* at 7.) He further alleges a "monopoly" between Mr. Quigley and Ms. Sawyer—allegedly the heads of the Washington State Department of Social and Health Services and Eastern State Hospital, respectively—related to his speedy trial clock. (*Id.*) Mr. Kelly alleges that he was arrested on December 3, 1995, and arraigned on January 9, 1996. (*Id.* at 8.) He contends that attorney John Nollette and Spokane County Superior

---

[1] There is no indication that Plaintiffs have served Defendants with summons and a copy of the complaint. (*See* Dkt.); *see also* Fed. R. Civ. P. 4; *infra* at 7, 9-10.

[2] Plaintiffs do not request oral argument (*see* Inj. Mot. at 1; 2d MFR at 1; IA Mot. at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Court Judge James M. Murphy appointed a "sanity commission" and a "15[-]day stay."[3] (*Id.* (omitting internal punctuation).) He further alleges that he was "forgotten" and "held" beyond 60 days. (*Id.*) Plaintiffs are currently imprisoned at Coyote Ridge Correctional Center. (*See id.* at 1.) As exhibits to their complaint, Plaintiffs attach various filings from Spokane County Superior Court. (*See id.*, Ex. 1 (Dkt. # 1-2).) One of the exhibits reveals that Mr. Trevino was recommended for inpatient evaluation at Eastern State Hospital on December 14, 2016, and that on December 23, 2016, he was deemed competent to stand trial. (*See id.* at 17, 20.)

Under the "Statement of Claim" section, Plaintiffs reference "'[t]he "Birth" of *Trueblood* (# C14-1178MJP)'; Antitrust Violation(s); Profit in 'Predatory' Interest(s)' 'Monopoly' of RCW 10.77 & CrR3.3(e)(1); Merger Thru [sic] Barriers Formed 'Distinct Group' Excluded Period(s) . . . 'Qui Tam' Action." (*Id.* at 4 (internal brackets omitted and internal punctuation altered); *see also id.* at 3 (raising the First Amendment right to petition the government, qui tam, the Sherman and Clayton Acts, 42 U.S.C. § 1983; 28 U.S.C. §§ 1343, 2201, 2202; Federal Rules of Civil Procedure 57 and 60(b); and Washington State Rules of Criminal Procedure).) They ask the court whether *Trueblood v. Washington State Department of Social & Health Services*, No. C14-1178MJP (W.D. Wash. 2014), a case or controversy under Article III of the United States Constitution, or an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201, "make[s] a distinct sep[a]ration of economic resources, economic interests, and intra-corporate

---

[3] The court dismissed Judge Murphy on May 8, 2018. *See infra* at 4.

conspiracy doctrine" and whether "this [is] a matter of usurped authority." (*Id.* at 8 (internal punctuation and capitalization omitted).)

Liberally construed, the court discerns that Plaintiffs allege constitutional violations related to their confinement and Washington State's procedures for civil competency evaluation and commitment, as addressed in *Trueblood*, 2016 WL 4268933, at *1 (W.D. Wash. Aug. 15, 2016) (requiring Washington State to complete in-jail competency evaluations within 14 days of a court order).[4] (*See, e.g.*, Compl., Ex. 1 at 60.) They seek relief from judgment under Rule 60(b), treble damages, qui tam awards, $90 million for Mr. Trevino, and $270 million for Mr. Kelly. (*Id.* at 30.)

On May 8, 2018, the court dismissed Plaintiffs' claims against Defendants Spokane County Superior Court Judge Gregory D. Sypolt; Spokane County Superior Court Judge James M. Murphy; Washington State Supreme Court Clerk Erin L. Lennon; and Washington State Supreme Court Clerk Susan L. Carlson (collectively, "Judicial Defendants"). (5/8/18 Order (Dkt. # 6) at 3.) The court concluded that it lacked subject matter jurisdiction over Judicial Defendants because Plaintiffs' allegations showed that Judicial Defendants were entitled to judicial or quasi-judicial immunity. (*Id.* at 2-3.) On June 11, 2018, Plaintiffs moved for reconsideration, which the court denied for two reasons: (1) the motion was untimely, and (2) Plaintiffs failed to show manifest error in

---

[4] Although Plaintiffs also cite other law, such as antitrust statutes and the qui tam statute, they do so to allege wrongful conduct in relationship to criminal competency matters. (*See, e.g.*, Compl. at 18-19.) For that reason, it does not appear that Plaintiffs actually intend to bring an antitrust or qui tam action.

the court's prior ruling or any new facts or legal authority that Plaintiffs could not have brought to the court's attention earlier. (6/15/18 Order at 3.)

On June 25, 2018, Plaintiffs moved for both a preliminary injunction and a permanent injunction. (*See* Inj. Mot.) Plaintiffs also filed a "supplement" in which they contest the court's June 15, 2018, order denying reconsideration of its decision to dismiss Judicial Defendants. (*See* 2d MFR at 2-3; *see also* 6/15/18 Order (Dkt. # 8) at 2-3 (denying first motion for reconsideration).) The court construes the supplement as a second motion for reconsideration. (*See generally* 2d MFR.) Finally, Plaintiffs request leave to appeal the dismissal of Judicial Defendants, which the court construes as a motion for interlocutory appeal. (*See* IA Mot. at 1.) No defendant has yet appeared or responded, and there is no indication that Plaintiffs have served Defendants. (*See* Dkt.) The court now addresses Plaintiffs' motions.

### III. ANALYSIS

**A. Second Motion for Reconsideration**

Plaintiffs ask the court to reconsider its decision denying Plaintiffs' previous reconsideration motion. (*See* 2d MFR at 2.) Plaintiffs argue that the first motion was timely because they completed a postage transfer on May 21, 2018, and their first motion was mailed on May 25, 2018. (*Id.* at 2; *see also id.* at 4 (attaching the postage transfer as an exhibit).) In making that argument, Plaintiffs appear to invoke the prison mailbox rule. *See Hernandez v. Spearman*, 764 F.3d 1071, 1074 (9th Cir. 2014) (stating that "[a] pro se prisoner's notice of appeal from the denial of a federal habeas petition is filed" at the time the prisoner delivers the notice to "prison authorities for forwarding to the court

clerk"); *Adler v. McDonald*, No. 2:15-cv-0789 TLN CKD P, 2016 WL 2346980, at *2 (E.D. Cal. May 4, 2016) ("Under the mailbox rule, a prisoner's pleading is deemed filed when he hands it over to prison authorities for mailing to the relevant court." (internal quotation marks omitted) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988))).

Although Plaintiffs turned over their motion to prison authorities for filing on May 21, 2018 (*see* 2d MFR at 4), the court nevertheless also denied the motion because Plaintiffs failed to demonstrate manifest error or any new facts or legal authority that they could not have brought to the court's attention before (*see* 6/15/18 Order at 2). Plaintiffs' current submission does not change that conclusion. (*See* 2d MFR at 2 (raising only the timeliness issue).) Thus, the court denies Plaintiffs' second motion for reconsideration and turns next to Plaintiffs' motion for certification of an interlocutory appeal.

**B.     Interlocutory Appeal**

Plaintiffs move for leave to appeal the dismissal of Judicial Defendants. (*See* IA Mot. at 1; Memo. (Dkt. # 12) (providing additional argument).) Their motion largely repeats the same arguments and case law found in their complaint and other motions. (*Compare* IA Mot., *and* Memo., *with* Compl., *and* 2d MFR, *and* Inj. Mot.) Plaintiffs also attach a letter from the Clerk for the Western District, which sent blank summons forms. (IA Mot. at 3.)

28 U.S.C. § 1292(b), which governs interlocutory appeals, provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state

in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). The proponent must demonstrate that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). The decision whether to certify a question for interlocutory appeal is within the district court's discretion. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46-47 (1995).

The court finds that there is no "controlling question of law as to which there is a substantial ground for difference of opinion." *See* 28 U.S.C. 1292(b). The question is not purely one of law, *see Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-cv-02093-KJM-KJN, 2018 WL 1518678, at *2 (E.D. Cal. Mar. 28, 2018), and based on the facts alleged, there is no substantial ground for differing opinions about whether Plaintiffs' claims against Judicial Defendants are barred by judicial or quasi-judicial immunity, *id.*, at *3. It is simply not enough that Plaintiffs "strongly disagree[] with the court's decision." *See id.* Moreover, certification of that issue would not "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). For those reasons, the court denies Plaintiffs' motion to certify the question of judicial and quasi-judicial immunity for interlocutory review.

//

//

**C.     Injunctive Relief**

The court now addresses Plaintiffs' request for preliminary and permanent injunctive relief.  (*See* Inj. Mot.)

    1.  <u>Legal Standard</u>

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)).  To obtain relief, "[a] plaintiff . . . must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must make a clear showing as to each of these elements.[5]  *Feldman*, 843 F.3d at 375.  "In cases where the movant seeks to alter the status quo, [a] preliminary injunction is disfavored and a higher level of scrutiny must apply." *Welchen v. Harris*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 430517, at *2 (E.D. Cal. Feb. 4, 2016).

To obtain permanent injunctive relief, a plaintiff must demonstrate (1) actual success on the merits; (2) that he has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justifies a remedy in

---

[5] In the Ninth Circuit, "'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Feldman*, 843 F.3d at 375 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1282, 1291 (9th Cir. 2013)).

equity; and (5) that the public interest would not be disserved by a permanent injunction. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013); *cf. Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

    2. Plaintiffs' Motion

As with their complaint, Plaintiffs' motion for injunctive relief is difficult to understand. They first state that the Honorable Marsha J. Pechman "ruled against the 'Collective Defendants'" in *Trueblood*, and held the defendants in that case in contempt of court. (Inj. Mot. at 2.) They then argue that the "new 'codes'" in that case "preclude herewith the 'goal' of protecting the 'Plaintiff(s), et al[.'s'] constitutional right to be free of unconstitutional seizure(s)." (*Id.* at 3 (capitalization and underlining omitted).) Finally, Plaintiffs argue that Defendants "permit[] 'Welfare State Capitalism' thru [sic] 'Monopolization' of intra-corporate conspiracy: contracts Eastern State Hosp[ital]" and that Plaintiffs have proved "'Fraud' beyond ordinary call." (*Id.* at 4 (internal brackets omitted).) They cite two cases—*Weeks v. United States*, 232 U.S. 383 (1914), and *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, -- U.S. --- (2015)—and invoke the Sherman Act, 15 U.S.C. § 1, in support of their motion. (*Id.* at 3, 5.) They seek a preliminary and permanent injunction to enjoin "state prosecution" against them. (*Id.* at 5.)

//

As an initial matter, the court cannot grant the relief Plaintiffs seek. First, there is no indication that Plaintiffs have served Defendants, and the court therefore lacks personal jurisdiction. *See Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1995) (stating that a court may only enjoin a party over whom it has personal jurisdiction); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [Federal Rule of Civil Procedure] 4."); *Joli Grace, LLC v. Country Visions, Inc.*, No. 2:16-1138 WBS EFB, 2016 WL 6996643, at *10 (E.D. Cal. Nov. 30, 2016) ("A district court has no authority to grant relief in the form of a preliminary injunction where it has no personal jurisdiction over the parties."). Second, the *Younger* abstention doctrine forbids the court from "enjoin[ing] pending state court proceedings"—the relief Plaintiffs seek.[6] *See Younger v. Harris*, 401 U.S. 37, 41 (1971); (Inj. Mot. at 5 (seeking an injunction of "state prosecution")); *see also AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007) ("The goal of *Younger* abstention is to avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures.").

In any event, Plaintiffs have not met the stringent standard for an injunction. *See Feldman*, 843 F.3d at 375. They make no argument on the likelihood of success on their claims, and based on the facts and claims alleged, the court cannot independently identify

---

[6] Although it is not clear that Plaintiffs' criminal proceedings are currently pending, the relief Plaintiffs request—an injunction to stop "state prosecution" against them—makes little sense if there are no pending proceedings. (*See* Inj. Mot. at 5.) If they instead seek to enjoin future prosecution, the court also cannot grant relief based on the record before it.

such a likelihood.[7] *See McDermott v. Potter*, No. C09-0776RSL, 2009 WL 1608461, at *1 (W.D. Wash. June 5, 2009) (denying a motion for a temporary restraining order because the *pro se* plaintiff "provided nothing either in his motions or his complaint that would indicate he is likely to succeed on the merits of his claim"). Moreover, they present no evidence to support their motion. *See Beaver-Jackson v. Ocwen Fed. Bank*, No. C07-0990RSM, 2007 WL 3358068, at *1 (W.D. Wash. Nov. 13, 2007). Nor is a permanent injunction appropriate because Plaintiffs show no likelihood of success—let alone actual success—on their claims. *See Battelle Energy All., LLC v. Southfork Sec., Inc.*, 3 F. Supp. 3d 852, 865 (D. Idaho 2014) ("[T]he [c]ourt cannot issue a permanent injunction unless the moving party first demonstrates actual success on the merits, not just a likelihood of success."); *Hadel v. Willis Roof Consulting, Inc.*, No. 2:06-cv-01032-RLH-RJJ, 2008 WL 4372783, at *2 (D. Nev. Sept. 23, 2008) (stating that a permanent injunction was premature because the plaintiffs had not demonstrated actual success at that the stage of the litigation).

//

---

[7] None of the legal authority Plaintiffs cite supports a different conclusion because that authority does not apply here. (*See* Inj. Mot. at 3.) First, *Weeks v. United States*, which established the exclusionary rule for improperly seized evidence under the Fourth Amendment, does not apply to Plaintiffs' claims because their allegations do not implicate seized evidence. *See* 232 U.S. at 391-92; *see also Mapp v. Ohio*, 367 U.S. 643, 648 (1961) (discussing *Weeks*); (*see generally* Compl.) Second, in *Wellness Int'l Network, Ltd. v. Sharif*, the Supreme Court held that Article III permits bankruptcy judges to adjudicate "*Stern* claims" when the parties knowingly and voluntarily consent, but this matter does not involve bankruptcy. *See* 135 S. Ct. at 1949; (*see generally* Compl.) Finally, the Sherman Act declares that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" is illegal. 15 U.S.C. § 1. Despite Plaintiffs' invocation of antitrust statutes and terminology, the content of their complaint demonstrates that they do not assert an antitrust claim. *See supra* n.3.

Plaintiffs also fail to make a showing on any of the other factors. They may intend to raise the length of their time in jail as a basis for their claims (*see generally* Compl.; Inj. Mot.), and imprisonment can constitute irreparable injury. *See Welchen*, 2016 WL 430517, at *2 (stating that unconstitutional imprisonment can be an irreparable injury); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 384 (C.D. Cal. 1982) (stating that an incarcerated plaintiff may "suffer irreparable injury from arbitrary solitary confinement [that] deprives [the plaintiff] of [his] liberty"). However, Plaintiffs fail to show an irreparable injury on the current record because neither their complaint nor their motion contains sufficient facts regarding their confinement, such as why they are currently confined (*e.g.*, awaiting prosecution, serving a sentence, etc.). (*See generally* Compl.; Inj. Mot.) Finally, Plaintiffs do not discuss the how balance of equities tips in their favor or whether an injunction is in the public interest. For these reasons, the court denies Plaintiffs' motion for a preliminary injunction.

**D.     Service**

As discussed above, Plaintiffs do not appear to have served Defendants. (*See* Dkt.) Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

//

//

Fed. R. Civ. P. 4(m).[8] In addition, the court may extend the time for service if a plaintiff's failure to serve is because of excusable neglect. *See Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2000). A plaintiff's *pro se* status alone, however, does not establish excusable neglect. *Mentzer v. Vaikutyte*, No. CV 16-1687 DMG (SS), 2018 WL 1684340, at *5 (C.D. Cal. Feb. 26, 2018) (citing *Mann v. Castel*, 729 F. Supp. 2d 191, 199 (D.D.C. 2010)).

Here, there is no indication that Plaintiffs have served Defendants, and more than 90 days have passed since Plaintiffs filed suit. (*See* Dkt.) Thus, the court orders Plaintiffs to show cause no later than August 17, 2018, why this case should not be dismissed without prejudice for failure to abide by Rule 4(m). If they fail to show good cause or excusable neglect or to respond to the court's order, the court will dismiss the case.

### IV. CONCLUSION

For the reasons set forth above, the court DENIES Plaintiffs' motion for injunctive relief (Dkt. # 9), DENIES Plaintiffs' second motion for reconsideration (Dkt. # 10), DENIES Plaintiffs' motion for interlocutory review (Dkt. # 11), and ORDERS Plaintiffs

//

//

---

[8] Because Plaintiffs are not proceeding *in forma pauperis* ("IFP") (*see* Dkt.), the rule that "officers of the court shall issue and serve all process" does not apply, *see* 28 U.S.C. § 1915(d). In any event, a prisoner proceeding IFP "may not remain silent and do nothing to effectuate service," and "[a]t a minimum, . . . should request service upon the appropriate defendant." *Burton v. Lewis*, No. C 12-3158 JSW (PR), 2012 WL 5505064, at *1 (N.D. Cal. Nov. 13, 2012). Plaintiffs have not taken any steps to effect service. (*See* Dkt.)

to show cause no later than August 17, 2018, why the court should not dismiss the case without prejudice for Plaintiffs' failure to serve Defendants.

Dated this 27th day of July, 2018.

_____
JAMES L. ROBART
United States District Judge